# Commonwealth *against* Anthony.

4 WS 511|
214 324|

An Act of Assembly authorized the judge of the Nicholson Court to appoint as commissioner, a person to be nominated " by a majority of the creditors whose claims have been reported and filed with the present commissioner, or any person authorized by them." The number of such creditors was 126: of these, 51 nominated a person, and the judge appointed and commissioned him.

*Held*, that the appointment was unauthorized and void, and that a mandamus would not be granted to restore him to office, after having been removed by the judge.

**COMMONWEALTH** *ex relatione* John Dungan against the Hon. Joseph B. Anthony, Judge of the Nicholson Court.

This was a rule on the defendant to show cause why a peremp-

[Commonwealth v. Anthony.]

tory mandamus should not issue, commanding him to restore the relator, John Dungan, to the office of commissioner on the part of the creditors of John Nicholson, deceased.

An alternative mandamus had been issued, directed to the defendant, reciting that John Dungan had been duly nominated, appointed and commissioned on the part of the creditors of John Nicholson, deceased, and by the defendant lawfully commissioned on the 14th of July 1840, and had taken the oath, and entered upon and discharged the duties of said appointment, as provided for in the Act entitled An Act to settle the estates of John Nicholson and Peter Baynton, passed April 16th 1840, and was, without legal cause shown, notice, or hearing whatever, removed from the office, by the defendant, in pursuance of a communication dated October 2d 1841, and entered on the record of the same court, on the 4th, contrary to law, &c., and commanding the defendant to restore the relator or show cause, &c.

The return of the defendant stated various causes of removal; but it is only necessary to state the first, as on that alone the opinion of the court was given. It was: " That true it is, the said John Dungan was appointed by this respondent, on the 14th day of July 1840, a commissioner under an Act entitled " An Act to settle the estates of John Nicholson and Peter Baynton," passed April 16th 1840, took the oath, and entered upon the discharge of his duties as commissioner aforesaid, and continued to act as such until he was removed, on the 4th day of October 1841. That the appointment of the said John Dungan was made in pursuance of the 3d section 'of the Act of April 16th 1840, aforesaid, which declares that " the governor shall nominate one person ; a majority of the creditors whose claims have been reported and filed with the present commissioner, or any person authorized by them, shall nominate one person ; and the heirs of the said Nicholson, or any person authorized by them, shall nominate one person to the judge aforesaid, who shall, if he approve thereof, appoint the commissioners thus nominated." And the respondent in fact saith, that at the time he appointed John Dungan commissioner as aforesaid, he was induced to believe, and did believe, that the said John Dungan was nominated by a majority of the creditors, whose claims had then been reported and filed with the *former* commissioner, or persons authorized by them; but the respondent says, that under, and by virtue of the Act of Assembly aforesaid, *one hundred and twenty-six* creditors of John Nicholson, deceased, had reported and filed their claims with the commissioner then in power, as required by said Act, at the day of the date thereof— *to wit,* the *sixteenth day of April* 1840 ; that due and timely notice was given, as required in the said Act, and that a majority of the creditors, whose claims, as above stated, had been reported and filed as aforesaid, did not, nor did any person authorized by them, nominate the said John Dungan to the respondent—who was then

Judge of the Nicholson Court of Pleas aforesaid—as or for the commissioner on the part of the creditors; but that, in fact, the said John Dungan only received the nomination of *fifty-one* creditors out of the said *one hundred and twenty-six.* And the respondent, in fact, further saith, that the said John Dungan never was duly nominated, appointed and commissioned to the office of a commissioner, on the part of the creditors of John Nicholson, deceased, as set forth in the *mandamus* hereunto annexed."

To this return the plaintiff demurred, and issue was joined on the demurrer.

*Tyson,* for the relator, contended that the return was insufficient. If fifty-one voted and the rest acquiesced, the nomination was good; for majority means having more votes than any other candidate. The judge thought the nomination sufficient, and acted upon it, and gave the relator his commission. He is bound by the construction thus given. Suppose it not good, then there was no nomination by the creditors, and the appointment is valid under the 9th section of the Act, which gives the Nicholson Court power to fill any vacancy in the commissioners, and, on cause shown, to remove any or all of the commissioners, and appoint another or others instead.

*Meredith, contra.* According to the return, the relator was not appointed on default, but on the nomination of creditors; and it must be good in this point of view or entirely void. As an original appointment it was clearly invalid. Fifty-one are not a majority of one hundred and twenty-six, as required by the Act. The authority given by the Act must be pursued.

The opinion of the Court was delivered by

SERGEANT, J.—It is very clear that the requisites of the Act of Assembly have not been complied with, and therefore the appointment of the relator was unauthorized and void. Though the power to appoint is given to a judge, yet the mode in which it is to be made is specially pointed out, and could not be departed from. It was to be on the nomination of a majority of the creditors whose claims had, at the passage of the Act of Assembly, been reported and filed with the then commissioner. They were thus a fixed and definite number — not subject, in this respect, to increase or diminution, or to any contingency; and that number was one hundred and twenty-six, of which fifty-one, not being a majority, had no power whatever to nominate a commissioner, nor could such nominee be duly appointed.

It is urged that the law contemplated a majority of such as voted at an election, and that until the contrary appears, the presumption is that the relator had more votes than any other candidate, and therefore may be said to have been nominated by a

[Commonwealth v. Anthony.]

majority of the one hundred and twenty-six. But there is nothing in the law which contemplates an election by the creditors. That could only take place by meeting at a time and place fixed for their attendance, and giving in their votes; whereas the nomination intended, obviously means one to be exercised by the creditors individually, in their separate rights, as interested in the fund, and a majority of the whole number is made necessary.

As to the claim that the judge had a right to appoint in case of a vacancy, and that the relator may hold under this provision, it is sufficient to say, it does not appear that there had been a vacancy. The appointment appears to have been made as an original one, and must be good as such or not at all.

The appointment then being void, the court will not restore the relator to an office which he had no title to hold or enjoy. They will not interfere to place him in an office to-day, from which they would remove him on a *quo warranto* to-morrow.

Motion denied.